KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
KAREN LEAF, State Bar No. 107703
Senior Assistant Attorney General
DENNIS ECKHART, State Bar No. 070730
NICHOLAS WELLINGTON, State Bar No. 226954
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 323-3770
 Fax: (916) 323-0813
 E-mail: Dennis.Eckhart@doj.ca.gov
 E-mail: Nicholas.Wellington@doj.ca.gov
*Attorneys for Plaintiff State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA, ex rel. Kamala D. Harris, Attorney General,**<br><br>Plaintiff,<br><br>v.<br><br>**ELIZABETH D. KIPP, in her capacity as Chairperson of the Tribal Council of the Big Sandy Rancheria Band of Western Mono Indians,**<br><br>Defendant. | **No. 1:12-cv-00659-LJO-SKO**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        June 27, 2012<br>Time:        8:30 a.m.<br>Dept:        4<br>Judge:      Lawrence J. O'Neill<br>Trial Date: Not set<br>Action Filed: April 25, 2012 |

1

**TABLE OF CONTENTS**

2

                                                                                                    **Page**

3

INTRODUCTION .................................................................................................................... 1

4

STATEMENT OF FACTS ........................................................................................................ 1

SUMMARY JUDGMENT STANDARDS ................................................................................ 4

5

ARGUMENT ............................................................................................................................. 5

6

      I.       The Jenkins/Pact Act Requires BSR to Register and Report Its Intrastate
              Sales And Shipments to the State............................................................................ 5

7

      II.     As The Tribal Official Responsible for Supervising BSR, Defendant Kipp
              is Responsible For BSR's Compliance With the Jenkins/Pact Act........................ 9

8

CONCLUSION ......................................................................................................................... 11

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page**

3

4

CASES

5

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986).............................................................................. 4

6

7

*Burlington N. & Santa Fe Ry. v. Vaughn*
    509 F.3d 1085 (9th Cir. 2007).............................................................. 10

8

*California Board of Equalization v. Chemehuevi Indian Tribe*
    474 U.S. 9 (1985).................................................................................. 8

9

10

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986).............................................................................. 4

11

*Dawavendewa v. Salt River Project*
    276 F.3d 1150 (9th Cir. 2002)............................................................. 10

12

13

*Delbon Radiology v. Turlock Diagnostic Center*
    839 F.Supp. 1388 (E.D. Cal. 1993)...................................................... 4

14

*Ex parte Young*
    209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908)............................. 10

15

16

*May v. Baldwin*
    109 F.3d 557 (9th Cir. 1997)................................................................. 4

17

*Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*
    425 U.S. 463 (1976)........................................................................... 8, 9

18

19

*Nidds v. Schindler Elevator Corp.*
    113 F.3d 912 (9th Cir. 1996)................................................................. 4

20

21

*Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*
    498 U.S. 505 (1991)........................................................................... 9, 10

22

*People ex rel. Harris v. Native Wholesale Supply Co.*
    196 Cal.App.4th 357 (2011)............................................................... 2, 9

23

24

*Santa Clara Pueblo v. Martinez*
    436 U.S. 49 (1978).............................................................................. 10

25

26

*Vander v. U.S. Dep't of Justice*
    268 F.3d 661 (9th Cir. 2001)................................................................. 4

27

28

ii

# TABLE OF AUTHORITIES
## (continued)

Page

*Washington v. Confederated Tribes of the Colville Indian Reservation*
    447 U.S. 147 (1980) ........................................................................................ 8, 9, 10

**STATUTES**

124 Stat. 1087-1111 ............................................................................................................ 5

124 Stat. 1087
    § 1(b)(10) ....................................................................................................................... 7
    § 1(c)(5) ......................................................................................................................... 8

15 U.S.C.
    § 375(9)(A) .................................................................................................................... 3
    § 375(10) ........................................................................................................................ 6
    §§ 375-378 ..................................................................................................................... 5
    § 376(a) ................................................................................................................... 1, 5, 6
    § 376(a)(1) ...................................................................................................................... 5
    § 376(a)(1) ...................................................................................................................... 3
    § 376(2) .......................................................................................................................... 3
    § 376(a)(2) ...................................................................................................................... 5
    § 376(a)(3) ...................................................................................................................... 6
    § 376(a)(9) ...................................................................................................................... 6
    § 378(c)(1)(A) ......................................................................................................... 1, 2, 9

**COURT RULES**

Federal Rule of Civil Procedure
    56 .................................................................................................................................... 4
    56(c) ............................................................................................................................... 4

Federal Rule of Evidence
    201(6) .............................................................................................................................

1

**INTRODUCTION**

2   BSR Distributing, which is also known as Big Sandy Rancheria Distribution, ("BSR") is a

3   business enterprise of the Big Sandy Rancheria Band of Western Mono Indians ("Tribe").  BSR

4   sells and ships cigarettes throughout the State of California from the Tribe's rancheria in Auberry,

5   Fresno County, California.  As of June 29, 2010, federal law, specifically 15 U.S.C. § 376(a),

6   commonly known as the Jenkins Act, requires that BSR (1) register with the Attorney General of

7   the United States and with the California Board of Equalization (Board) and (2) file a report each

8   month with the Board, detailing the quantities, brands and recipients of the cigarettes BSR ships

9   within the State, including when it ships cigarettes to other Indian tribes or Indian-owned

10   businesses in Indian Country.

11   The Attorney General of the State of California is authorized by the Jenkins Act, as

12   amended in 2010 by the Prevent All Cigarette Trafficking ("PACT") Act, to bring suit on behalf

13   of the State of California to enforce the Act's registration and reporting obligations.  15 U.S.C. §

14   378(c)(1)(A).

15   Defendant Elizabeth Kipp, as Chairperson of the Tribal Council, is charged by the Tribe's

16   Constitution with supervising all tribal officers and employees, including BSR, and is responsible

17   for "see[ing] that their duties are properly performed."  Constitution of the Big Sandy Band of

18   Western Mono Indians, adopted on February 21, 2000, art. VII, § 1.

19   The facts, as set forth in the separate statement and supported by the evidence submitted

20   with the State's motion for summary judgment, are not in dispute, and, as demonstrated below,

21   the applicable law is unequivocal.  Consequently, this Court should grant the State's motion and

22   enter judgment and a permanent injunction directing defendant Kipp to see that BSR complies

23   with its registration and reporting obligations.

24

**STATEMENT OF FACTS**

25   The Tribe publicly acknowledges, to everyone with access to the Internet, that BSR is one

26   its business enterprises.  Statement of Undisputed Facts in Support of Plaintiff's Motion for

27   Summary Judgment ("Undisp. Facts") no. 1.  In an April 30, 2011, letter to plaintiff's counsel,

28   defendant Kipp stated "BSRD [Big Sandy Rancheria Distribution] is a political and economic

1

1   subdivision of the Tribe." *Id.*; *see* exhibit I to Declaration of Dennis Eckhart in Support of

2   Plaintiff's Motion for Summary Judgment ("Eckhart Dec.").

3        The Tribe's Constitution provides that the Chairperson of the Tribal Council "shall have

4   general supervision of all other tribal officers, employees and committees of Tribe" – authority

5   that undoubtedly extends to BSR.  Undisp. Fact no. 2.[1]

6        BSR ships truckloads of cigarettes on an apparently daily basis from the Tribe's reservation

7   in Auberry to locations all over the State.[2]  Undisp. Fact no. 3.

_____

[1] In litigation commenced just last year in this Court, *Big Sandy Rancheria of Western Mono Indians, et al. v. Brownstone, LLC*, case 1:11-cv-00198-OWW –GSA, the Tribe attached a copy of its Constitution to its complaint.  See exhibit B to Eckhart Dec.  Plaintiff asks the Court to take judicial notice of this fact.  *See* Fed. R. Evid. 201(6).

[2] BSR has been in the cigarette distribution business for several years, buying and selling the Seneca brand, which is manufactured in Canada by Grand River Enterprises Six Nations Ltd, as well as other "Native American" brands.  *See* exhibit A to Eckhart Dec. (pack of Seneca brand cigarettes depicted on Tribe's website).

In litigation involving Native Wholesale Supply Company ("NWS"), a New York importer that supplies cigarettes to BSR, the California Court of Appeal described BSR's role:

> In California, NWS sells the Grand River cigarettes primarily to Big Sandy Rancheria (Big Sandy), an Indian tribe with 431 members located on a reservation about 40 miles northeast of Fresno. A sales transaction occurs when Big Sandy places an order with NWS.  NWS then releases the cigarettes from storage and arranges for their transport either to Big Sandy or to other Indian retailers (as apparently directed by Big Sandy) in California.  Big Sandy and the other Indian retailers then sell the cigarettes to the general public in California. The cigarettes are stamped "For Reservation Sales Only."
>
> Using this system since late 2003, NWS has delivered over 325 million cigarettes, worth nearly $12 million, to California.  In 2007 alone, NWS shipped and sold approximately 80 million cigarettes (4 million standard packs) to the 431-member Big Sandy.

*People ex rel. Harris v. Native Wholesale Supply Co.*, 196 Cal.App.4th 357, 362-363 (2011).

The evidence supporting fact no. 3 includes observations made at BSR on three consecutive days in early February of this year.  *See* Declaration of Roger McKee in Support of Plaintiff's Motion for Summary Judgment ("McKee Dec.) and attached photos.  On each of those days, BSR employees were seen using a forklift to load pallets of cigarettes onto delivery trucks.  *Id.*

On just one of those days, February 6, 2012, BSR shipped out, via Golden State Overnight, 13 cases to Oasis Mini Mart in Earp, San Bernardino County; 21 cases to Cahuilla Smoke Shop in Anza, Riverside County; 2 cases to CJ's Smoke Shop in Big River, San Bernardino County; 20 cases to Native Spirit Tobacco in Thermal, Riverside County; and 3 cases to Huber Enterprise in

(continued…)

2

1   With the PACT Act's amendment of the Jenkins Act, which became effective on June 29,

2   2010, any person shipping cigarettes, as well as roll-your-own or smokeless tobacco, in interstate

3   commerce, as specifically defined in the Act, 15 U.S.C. § 375(9)(A), is required to register with

4   the Attorney General of the United States and with the State's tax administrator and file a report

5   every month with the State, detailing its shipments, 15 U.S.C. § 376(a)(1) & (2).

6   As described in the argument below, the Jenkins Act, as amended by the PACT Act, applies

7   to BSR and its off-reservation shipments.  But BSR has not registered with either the Attorney

8   General of the United States or with the California Board of Equalization.  Undisp. Facts nos 4 &

9   5.  Nor has BSR ever filed a report with the Board of Equalization.  Undisp. Fact no. 6.

10   In early February 2011, the State Attorney General's Office attempted to notify BSR of its

11   federal registration and reporting obligations, by sending a letter to one of the Tribe's attorneys.

12   Undisp. Fact no. 7, exhibit F to Eckhart Dec.  After that attorney stated he did not represent the

13   Tribe on such matters, a letter was sent to BSR's administrator.  Undisp. Fact no. 8, exhibits G

14   and H to Eckhart Dec.  Defendant Kipp responded to that latter letter, stating unequivocally her

15   view that under the PACT Act, ". . . there is simply no compliance obligation under the

16   circumstances at hand."  Undisp. Fact no. 9; exhibit I to Eckhart Dec.

17   The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), in the Department of

18   Justice, is the federal agency responsible for implementing and enforcing the PACT Act.  In a

19   document entitled "Implementation of the Prevent All Cigarette Trafficking Act of 2009 (PACT

20   Act) Tribal Consultation Process," the ATF answered the question: "Does [the term 'interstate

21   commerce'] include cigarettes transported between two Indian reservations within a State," by

22   stating

23   . . . Interstate Commerce is defined at 15 U.S.C. § 375(9) to include commerce
     between points in the same State through any Indian Country.  Therefore, as defined

24   

_____

25   (…continued)
     Loleta, Humboldt County.  Exhibit C to Eckhart Dec., GSO invoice to BSR Distribution, dated

26   2/15/2012, pp. 8-12.  On March 14 of this year, BSR shipped out, via Con-way Freight, 129 cases
     to Huber Enterprise, and a week later BSR shipped out another five pallets of cigarettes to Huber.

27   *See* exhibit D to Eckhart Dec.

28   

3

> by statute, intrastate transportation between two separate reservations would be in interstate commerce.  As such, the Jenkins Act's reporting requirements in 15 U.S.C. § 376(a), as amended by the PACT Act, apply to sales within and between Indian country.  Moreover, shipments made to an Indian reservation must be reported to the State, as States have the ability under their tax laws to tax shipments to reservations if the cigarettes are intended for use by persons who are not members of the local tribe.

Exhibit G to Eckhart Dec., enclosure to March 22, 2011, letter to Administrator of BSR, pp 1-2.

In a document currently posted on its public website at http://www.atf.gov/alcohol-tobacco/pact-act-faqs.pdf, the ATF answers a "Frequently Asked Question": "Does Selling and transporting tobacco from one Native American reservation or territory to another Native American reservation or territory qualify as interstate commerce?" with "Yes, even if the sale and transportation occurred within the same State."  Exhibit J to Eckhart Dec.

## SUMMARY JUDGMENT STANDARDS

When considering a motion for summary judgment, the district court's role is not to weigh the evidence, but merely to determine whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *May v. Baldwin*, 109 F.3d 557, 560 (9th Cir. 1997).  Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the party opposing the motion, the court determines that there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Vander v. U.S. Dep't of Justice*, 268 F.3d 661, 663 (9th Cir. 2001).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

The materiality of facts is determined by looking to the substantive law that defines the elements of the claim.  *Anderson*, 477 U.S. at 248; *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1996).

Summary judgment is appropriate if there is a pure question of law.  *Delbon Radiology v. Turlock Diagnostic Center*, 839 F.Supp. 1388, 1391 (E.D. Cal. 1993) ("This court may grant summary judgment if it finds there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Proc. 56(c).").

4

# ARGUMENT

**I.  THE JENKINS/PACT ACT REQUIRES BSR TO REGISTER AND REPORT ITS INTRASTATE SALES AND SHIPMENTS TO THE STATE**

As pertinent to this action, the Jenkins Act, 15 U.S.C. §§ 375-378, as amended in 2010 by the Prevent All Cigarette Trafficking (PACT) Act, Pub. Law 111-154, 124 Stat. 1087-1111, imposes three distinct obligations on "any person who sells, transfers, or ships for profit cigarettes or smokeless tobacco in interstate commerce whereby such cigarettes or smokeless tobacco are shipped into a State, locality, or Indian country of an Indian tribe taxing the sale or use of cigarettes or smokeless tobacco . . . ." 15 U.S.C. § 376(a).  The first two obligations require only (1) a simple, one-time filing (sometimes referred to as "registration") with the Attorney General of the United States and (2) a similar filing with the tobacco tax administrator of the State or States into which the person ships cigarettes or smokeless tobacco.

Such persons ". . . shall

> (1) first file with the Attorney General of the United States and with the tobacco tax administrators of the State and place into which such shipment is made . . . a statement setting forth his name and trade name (if any), and the address of his principal place of business and of any other place of business; and, as well as telephone numbers for each place of business, a principal electronic mail address, any website addresses, and the name, address, and telephone number of an agent in the State authorized to accept service on behalf of the person;

15 U.S.C. § 376(a)(1).

The third obligation imposed on all persons engaged in such activities is to file a monthly report of shipments with the State's tobacco tax administrator.  They shall

> (2) not later than the 10th day of each calendar month, file with the tobacco tax administrator of the State into which such shipment is made, a memorandum or a copy of the invoice covering each and every shipment of cigarettes or smokeless tobacco made during the previous calendar month into such State; the memorandum or invoice in each case to include the name and address of the person to whom the shipment was made, the brand, and the quantity thereof . . . .

15 U.S.C. § 376(a)(2).

The Jenkins Act's reporting requirements, both as originally enacted over 60 years ago and as expanded by the PACT Act, assist States in the collection of taxes on cigarettes and in combating smuggling and other criminal activity, and since 2010, on smokeless tobacco, as well.

5

1  In the PACT Act Congress mandated additional and expanded reporting, in recognition that the

2  States' interests in taxing and regulating the sale of cigarettes and smokeless tobacco within their

3  borders require more, not less, information about the shipment of such products into and within

4  their borders.

5      While the Jenkins Act formerly required reporting of cigarette shipments that crossed state

6  lines and only if the shipment was going to someone other than a state-licensed cigarette

7  distributor, the PACT Act added a requirement for reporting of shipments into and out of Indian

8  Country, even though the shipment crosses no border between States:

9      The term "interstate commerce" means commerce between a State and any place
       outside the State, commerce between a State and any Indian country in the State, *or*
10     *commerce between points in the same State but through any place outside the State or*
       *through any Indian country.*
11

12  15 U.S.C. § 376(a)(9); italics added.

13      That Congress intends tribal businesses, like BSR, to report to State tax authorities their

14  intrastate cigarette shipments is evidenced by the PACT Act itself, by its legislative history and,

15  as described above, by interpretation of the Act by the federal agency charged with its

16  administration.

17      The PACT Act expanded the definition of "person" in the Jenkins Act to expressly include

18  both "an Indian tribal government" and "a governmental organization of [an Indian tribal]

19  government." 15 U.S.C. § 375(10). Indeed, Congress was just as mindful of Tribes' interests in

20  collecting any tribal taxes on tobacco as it was of States' interests in collecting state taxes on

21  tobacco. In section 376(a), quoted above, the registration and reporting obligations expressly

22  apply to person who ship cigarettes into "Indian country of an Indian tribe taxing the sale or use

23  of cigarettes or smokeless tobacco." In addition, Congress mandated that

24      with respect to each memorandum or invoice filed with a State under paragraph (2)
       [of section 376(a)], [such persons shall] also file copies of the memorandum or
25     invoice with the tobacco tax administrators and chief law enforcement officers of the
       local governments *and Indian tribes operating within the borders of the State that*
26     *apply their own local or tribal taxes on cigarettes or smokeless tobacco.*

27  15 U.S.C. § 376(a)(3); italics added.

28

In a different, but related, context, Congress was well aware, in 2010, that the sale and shipment of cigarettes and smokeless within a State's borders affects interstate commerce. Regarding shipments directly to consumers by Internet retailers, Congress found that "the *intra*state sale of illegal cigarettes and smokeless tobacco over the Internet has a substantial effect on interstate commerce."  P.L. 111-154, § 1(b)(10), 124 Stat. 1087, italics added.

The PACT Act was years in the making.  The House passed a version of the PACT Act in 2008.  House comments regarding the bill on September 9, 2008, show that Congress intended to regulate shipments from Indian reservations.  One of the bill's sponsors testified:

> In just my State of New York, 280 million packs of cigarettes were sold on Native American reservations.  In 2006, it's 360 million. . . .  What is really happening is that more and more people are buying cigarettes on the Internet, they're not reporting that they're buying them on these Web sites, which are by and large on Native American lands, and they're not paying taxes on it.  And that's what's happened.  Now, not only is this a great source of great revenue loss to States--my home State of New York estimates anywhere from hundreds of millions to as much as a billion dollars of lost revenue – but according to the Government Accountability Office, it might be used, as so many other smuggling operations are, for things more than just illicit activity, but terrorism.

110th Congress, Cong. Rec. H4081 (daily ed. Sept. 9, 2008 (statement of Rep. Weiner)

When the House took up the bill again two years later, Representative Weiner testified:

> If you think you're going to skirt the law by driving to your neighborhood Indian reservation, buying boxes and boxes or cases and cases of cigarettes, not paying taxes on it, well, now that's a violation of the Jenkins Act that rises to a felony. So it might make sense for the U.S. Attorney or for an attorney general to say, You know what? We're going to do a stakeout here, and if we find untaxed tobacco is being sold or undertaxed tobacco is being sold, we're going to crack down on it.

111th Cong., Cong. Rec. H1534 (daily ed. Mar. 17, 2010) (statement of Rep. Weiner).

During debate on in the House in 2009, Representative Sheila Jackson-Lee testified, "Cigarette smuggling is on the rise due to the internet and sales to and between Native American tribes,"  Congressional Record – Extension of Remarks, Proceedings and Debates of the 111th Congress, May 21, 2009.  Shortly before passage of the PACT Act in the House, Representative Herseth Sandlin stated that he would not support the bill because it "would open the door to allowing States to bring felony charges against tribes and tribal businesses who participate in tribe-to-tribe transactions."  *Id.*, March 18, 2010.

7

1    As noted above, implementation of the PACT Act is delegated to the Attorney General of

2    the United States and within the Department of Justice to the Bureau of Alcohol, Tobacco,

3    Firearms and Explosives ("ATF").  Although Congress did not give ATF authority to adopt

4    formal regulations, ATF has twice addressed the question whether intrastate shipments, like the

5    ones BSR is making, from Indian country in one part of a State to Indian country in another part

6    of the same State, need to be reported to the State.  In both instances, ATF has said –

7    unequivocally – that the person making those shipments must report them to the State's tax

8    authorities.  Undisputed fact no. 10; exhibits H & J to Eckhart Dec.

9    Among Congress's goals for the PACT Act is to "(5) increase collections of Federal, State,

10   and local excise taxes on cigarettes and smokeless tobacco."  P.L. 111-154, § 1(c)(5), 124 Stat.

11   1087.  It has long been the law of the land that non-tribal members who purchase cigarettes on

12   Indian reservations owe the same amount of state taxes they would have paid if the cigarettes had

13   been purchased outside of Indian Country.  In a series of decisions sometimes called the "smoke

14   shop" cases, the U.S. Supreme Court has held that a State can require Tribes and tribal members

15   who sell cigarettes on the Tribe's reservation to collect state cigarette taxes from non-member

16   purchasers because the incidence of the state's tax falls on the purchasers not the retailers.  *Moe v.*

17   *Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 482-83 (1976);

18   *Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 147, 155-61

19   (1980); *California Board of Equalization v. Chemehuevi Indian Tribe*, 474 U.S. 9, 11-12 (1985),

20   *per curiam*.

21   It is painfully apparent that the value marketed by the smokeshops to persons
     coming from outside is not generated on the reservations by activities in which the
22   Tribes have a significant interest.  [Citation omitted.] What the smokeshops offer
     these customers, and what is not available elsewhere, is solely an exemption from
23   state taxation.  The Tribes assert the power to create such exemptions by imposing
     their own taxes or otherwise earning revenues by participating in the reservation
24   enterprises.  If this assertion were accepted, the Tribes could impose a nominal tax
     and open chains of discount stores at reservation borders, selling goods of all
25   descriptions at deep discounts and drawing customers from surrounding areas.  We do
     not believe that principles of federal Indian law, whether stated in terms of pre-
26   emption, tribal self-government, or otherwise, authorize Indian tribes thus to market
     an exemption from state taxation to persons who would normally do their business
27   elsewhere.

28   *Colville*, 447 U.S. at 155.

8

Calling what the tribes were offering their non-member purchasers "an artificial competitive advantage over all other businesses in a State," *id.*, the Court in *Colville* went on to explain that the State's "governmental interest in raising revenues is . . . strongest when the tax is directed at off-reservation value and when the taxpayer is the recipient of state services," that this interest outweighs the "minimal burden" of collection imposed on the retailers, and that faced with a tribe's refusal to collect applicable state taxes, state authorities may seize, as contraband, unstamped cigarettes on route to the reservation, *id.* at 161-2.

Every carton of cigarettes BSR distributes in California that ends up being sold to a non-tribal member – which is certainly the vast majority of the hundreds of thousands of cartons BSR sells every year – should generate $8.70 in tax revenue to the State.[3]  Securing BSR's compliance with its reporting obligations under the PACT Act will help the State combat tax-evasion by Indian retailers and their non-Indian customers, who go to Indian reservations to purchase cheap cigarettes – cheap because they are untaxed.

Lastly, indicating the importance of enforcement of the expanded reporting requirements of the PACT Act, Congress added express authority for a state's chief law enforcement officer to "bring an action in a United States District Court on behalf of the State to prevent and restrain violations of [the Jenkins] Act by any person or to obtain any other appropriate relief from any person for violations of [the Jenkins] Act, including civil penalties, money damages, and injunctive or other equitable relief."  15 U.S.C. § 378(c)(1)(A).  In this action, which the State believes is the first ever involving a tribal business enterprise, the State seeks only an injunction.

## II.   AS THE TRIBAL OFFICIAL RESPONSIBLE FOR SUPERVISING BSR, DEFENDANT KIPP IS RESPONSIBLE FOR BSR'S COMPLIANCE WITH THE JENKINS/PACT ACT

Having established in *Moe* and *Colville* that States have a right to require Tribes to collect and remit state taxes on cigarettes sold to non-tribal members, the Court next faced the question whether states have a right to sue a tribe for uncollected taxes.  *Oklahoma Tax Comm'n v. Citizen*

---

[3]  As the California Court of Appeal noted in *People v. Native Wholesale Supply,* NWS sold 80 million packs of cigarettes to BSR in 2007 alone, and even if almost every one of the Tribe's 431 members smoked two packs a day, they would have consumed only about 280,000 packs.  196 Cal.App.4th at 363-64.

9

1   *Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505 (1991).  Although it held that the

2   Tribe was immune from the State's suit to collect taxes, the Court disagreed that this left the State

3   without a remedy to enforce its right to the taxes owed by the non-Indian purchasers.

> There is no doubt that [tribal] sovereign immunity bars the State from pursuing the most efficient remedy, but we are not persuaded that it lacks any adequate alternatives. We have never held that individual agents or officers of a tribe are not liable for damages in actions brought by the State.  *See Ex parte Young*, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908).  And under today's decision, States may of course collect the sales tax from cigarette wholesalers, either by seizing unstamped cigarettes off the reservation, *Colville, supra*, at 161-162, or by assessing wholesalers who supplied unstamped cigarettes to the tribal stores, *City Vending of Muskogee, Inc. v. Oklahoma Tax Comm'n*, 898 F.2d 122 (CA10 1990).

9   *Oklahoma Tax Comm'n*, 498 U.S. at 514.

10      *Ex parte Young* established the oft-cited doctrine that although States and their agencies, as

11  sovereigns, are immune from suit for violating federal constitutional or statutory law, state

12  officials may nonetheless be sued for prospective injunctive relief.  *Ex parte Young,* 209 U.S. 123,

13  155-6 (1908).

14      Even before the Court decided *Colville* and *Citizen Band*, it had held that tribal members

15  who act contrary to federal law are not protected by the tribe's sovereign immunity and may be

16  sued for declaratory and injunctive relief.  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59

17  (1978).     The Ninth Circuit has relied on *Ex parte Young*, *Colville* and *Citizen Band* in

18  allowing actions to proceed against tribal officials who act contrary to federal law.  *Burlington N.

19  & Santa Fe Ry. v. Vaughn*, 509 F.3d 1085, 1092 (9th Cir. 2007); *Dawavendewa v. Salt River

20  Project*, 276 F.3d 1150, 1159-61 (9th Cir. 2002).

> This doctrine has been extended to tribal officials sued in their official capacity such that "tribal sovereign immunity does not bar a suit for prospective relief against trial officers allegedly acting in violation of federal law.  *Burlington N. R.R. Co. v. Blackfeet Tribe,* 924 F.2d 899, 901 (9th Cir. 1991), *overruled on other grounds by Big Horn County Elec. Coop., Inc. v. Adams,* 219 F.3d 944, 953 (9th Cir. 2000.)

24  *Burlington N. & Santa Fe Ry.*, 509 F.3d at 1092.

25      Because defendant Kipp, as Chairperson of the Tribal Council, is expressly authorized by

26  the Tribe's Constitution to supervise tribal employees, she is responsible for the operations of

27  BSR, a tribal enterprise.  Consequently, she is the tribal official against whom the prospective

28  injunctive relief the State seeks in this action would be effective.  *See* exhibit I to Eckhart Dec.

10

**CONCLUSION**

There being no triable issue of material fact and plaintiff's entitlement to judgment as a matter of law having been demonstrated, this Court should enter summary judgment and a permanent injunction requiring defendant to exercise her authority under the Tribe's Constitution and see to it that BSR Distributing complies with the registration and reporting obligations imposed by the Jenkins/PACT Act.

Dated:  May 3, 2012                                    Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
KAREN LEAF
Senior Assistant Attorney General


/s/ Dennis Eckhart
DENNIS ECKHART
Deputy Attorney General
*Attorneys for Plaintiff*

SA2011303843

11